**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JAMES GILLIAM, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY, et al.,<br><br>Defendants. | No. 04-cv-11600-NG |
| BOGATIN FAMILY TRUST, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY, et al.,<br><br>Defendants. | No. 04-cv-11642-NG |
| CYNTHIA A. BENNETT and GUY E. MILLER,<br><br>Plaintiffs,<br><br>v.<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY, et al.,<br><br>Defendants. | No. 04-cv-11651-MLW |

[Caption continues on next page]

| | |
|---|---|
| GHASSAN J. AWALI et al. Individually And On Behalf Of All Others Similarly Situated,  )<br>)<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>FIDELITY MANAGEMENT & RESEARCH COMPANY, et al.,  )<br>)<br>Defendants.  )<br>)<br>) | No. 04-cv-11709-MLW |
| WILLIAM S. GROESCHEL, Individually And )<br>On Behalf Of All Others Similarly Situated,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>FIDELITY MANAGEMENT & RESEARCH COMPANY, et al.,  )<br>)<br>Defendants.  )<br>)<br>) | No. 04-cv-11735-GAO |
| NANCY HAUGEN, MICHAEL F. MAGNAN, )<br>KAREN L. MAGNAN, ROSE M. IANNACCONE, PRESLEY C. PHILLIPS, ANDREA M. PHILLIPS, and CINDY SCHURGIN, for the use and benefit of FIDELITY MAGELLAN and FIDELITY CONTRAFUND,  )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>FIDELITY MANAGEMENT & RESEARCH COMPANY and FMR CO., INC.,  )<br>)<br>Defendants.  ) | No. 04-cv-11756-MLW |

[Caption continues on next page]

| | |
|---|---|
| DAVID O. FALLERT, Individually And On Behalf Of All Others Similarly Situated,  )<br>)<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>FIDELITY MANAGEMENT & RESEARCH COMPANY, et al.,  )<br>)<br>)<br>Defendants.  )<br>)<br>) | No. 04-cv-11812-MLW |

**THE *HAUGEN* PLAINTIFFS' [PROPOSED] SUR-REPLY
IN OPPOSITION TO MOTIONS FOR CONSOLIDATION AND
APPOINTMENT OF TRI-LEAD AND LIAISON COUNSEL**

**Preliminary Statement**

The *Haugen* Plaintiffs respectfully submit this sur-reply in response to the arguments made by the *Gilliam* Plaintiffs in the Memorandum in Further Support of their Motion for Appointment of Tri-lead Counsel and Liaison Counsel and Motion for Consolidation (hereinafter "Reply").[1] In their previous filings the *Haugen* Plaintiffs have explained the substantive and procedural differences between their lawsuit and the Class Action lawsuits brought by the plaintiffs in *Gilliam* (04-cv-11600-NG), *Bogatin Family Trust* (04-cv-11642-NG), *Awali* (04-cv-11709-MLW), *Groeschel* (04-cv-11735-GAO) and *Fallert* (04-cv-11812-MLW) (respectively, the "Class Actions" and the "Class Action Plaintiffs"), which make consolidation improper under Fed. R. Civ. P. 42(a). In this sur-reply, the *Haugen* Plaintiffs address those arguments made by the Class Action Plaintiffs in their Reply.

---

[1] Although the Class Action plaintiffs describe their new filing as a memorandum "in further support" of their motions for consolidation and appointment of lead counsel, it is in fact a reply memorandum which was filed without conferring with counsel as required by Local Rule 7.1(A)(2) and without leave of court as required by Local Rule 7.1(B)(3). The Class Action Plaintiffs have belatedly moved for leave to file their Reply. The *Haugen* Plaintiffs oppose their motion solely on the grounds that the Class Action Plaintiffs refused to agree to the *Haugen* Plaintiffs' request for leave to file this sur-reply.

3

The Class Action Plaintiffs' motions for consolidation and for appointment of tri-lead and liaison counsel should be denied because there is a pointed factual antagonism between claims asserted by the *Haugen* Plaintiffs under Section 36(b) of the Investment Company Act ("ICA"), 15 U.S.C. §80a-35, and those asserted in the Class Actions. Being forced to litigate with the Class Action Plaintiffs not only would create a bottleneck to the resolution of the *Haugen* Action and the related *Bennett* Action, where none otherwise exists, and but it would also force them to litigate their cases together with Class Action Plaintiffs and their counsel ("Class Action Counsel") who are saddled with conflicts.

### A.    The Class Action Plaintiffs Unfairly Criticize The Motives of the *Haugen* Plaintiffs and Their Counsel.

Class Action Counsel criticizes the *Haugen* Plaintiffs and their counsel for seeking recovery only on behalf of the two largest and most costly Fidelity mutual funds rather than employing their indiscriminate scattershot approach of bringing myriad class and derivative claims asserting largely unrelated legal theories on behalf of the millions of investors holding a total of 208 Fidelity mutual funds. Class Action Counsel assert that the *Haugen* Plaintiffs limited their case to the two largest Fidelity mutual funds "for the **sole** purpose of getting a lead position for their counsel at the expense of the vast majority of Fidelity funds who would be left with no representation under *Haugen/Bennett's* restrictive legal theories." Reply, p. 3 (emphasis in original). This criticism is belied by the facts.

First, the two Fidelity mutual funds at issue in the *Haugen* Action – Fidelity Magellan Fund and Fidelity Contrafund -- were not chosen by happenstance but because, as the largest of Fidelity's mutual funds, Magellan and Contrafund are the most egregious examples of Fidelity's failure to pass on economies of scale to their shareholders in the form of reduced advisory fees. As discussed in Section B below, there is a direct

antagonism between the Section 36(b) claims asserted by the *Haugen* Plaintiffs and the Section 36(b) claims asserted in the Class Actions that renders consolidation of all such claims inappropriate.

Second, the decision by the *Haugen* Plaintiffs' counsel to bring Section 36(b) claims only on behalf of Fidelity Magellan Fund and Fidelity Contrafund could not have been motivated by a desire to get a leadership position **because the *Haugen* Plaintiffs filed suit months before the first of the Class Actions was filed**. The *Haugen* Action was filed in District of Arizona on May 5, 2004 before being transferred to this Court. The first of the Class Actions, *Gilliam,* was not filed until July 19, 2004. Indeed, it is only Class Action Counsel who have sought get a lock on these cases and to preclude the *Haugen* Plaintiffs from litigating their claims.

Third, as discussed in detail in the *Haugen* Plaintiffs' prior submissions (as well as in the prior submissions of the Defendants), there are significant and material differences -- both substantive and procedural -- between the *Haugen* Action and the Class Actions that render consolidation inappropriate under Fed. R. Civ. P. 42(a). To the extent that there is any overlap between the Class Action Complaints and the *Haugen* Complaint (Reply, pp. 6-7) it is because the Class Action Plaintiffs and Class Action Counsel copied the allegations from the *Haugen* Complaint and the related *Bennett* Complaint. Indeed, much of the discussion in the Class Action Complaints about Fidelity's excessive management fees, failure to pass on economies of scale and failure to offer breakpoints – which are at the heart of the *Haugen* Complaint and the related *Bennett* Complaint, but appear as an afterthought in the Class Action Complaints – are lifted, in some instances *verbatim,* from the *Haugen* Complaint and the related *Bennett* Complaint. *Compare Gilliam* Complaint, ¶¶63, 68, 69(a)-(e), 70, 71, 74 with *Bennett* Complaint, ¶¶15, 16, 17, 18, 19, 22(a)-(e), 32, 65 and *Haugen* Complaint, 15, 16, 17, 18, 19, 31, 67.

Class Action Counsel should not be appointed lead counsel to litigate those claims, where as here, counsel for the *Haugen* and *Bennett* Plaintiffs did the extensive work to identify and investigate their excessive management fee claims under Section 36(b) of the ICA, while Class Action Counsel copied those allegations to bring their own complaints. *See* Fed. R. Civ. P. 23(g)(1)(c).[2] Having piggy-backed on the work product and investigation of counsel for the *Haugen* and *Bennett* Plaintiffs, Class Action Counsel should not be rewarded by receiving appointment as lead counsel to litigate the claims they did not even originate.

Last, denial of the Class Action Plaintiffs' motions for consolidation and appointment of lead counsel will not leave "the vast majority of the Fidelity Funds without recourse" as the Class Action Plaintiffs suggest. Reply, pp. 13-14. The *Haugen* Plaintiffs do not seek to preclude the Class Action Plaintiffs from pursuing their various legal theories with respect to the Fidelity funds not owned by the *Haugen* Plaintiffs. The *Haugen* Plaintiffs simply do not want their focused, stream-lined claims to be bogged down in the Class Action Plaintiffs' massive litigation of extraneous matters that will no doubt lead to delays in the resolution of the *Haugen* Action. The cases should not be

---

[2] Neither the *Haugen* Action nor the *Bennett* Action is a class action. Rather, they are quasi-derivative actions under Section 36(b) of the Investment Company Act, 15 U.S.C. §80a-35. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 542 (1984). Nevertheless, in the context of the Class Action Plaintiffs' motion for appointment of lead counsel, it is appropriate for the court consider the factors set forth in Fed. R. Civ. P. 23(g). Under Fed. R. Civ. P. 23(g)(1)(c), in appointing class counsel, the court must consider:

- The work counsel has done in identifying or investigating potential claims in the action;
- Counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;
- Counsel's knowledge of the applicable law, and
- The resources counsel will commit to representing the class.

Not only has class counsel relied on the investigation of counsel for the *Haugen* Plaintiffs and the *Bennett* Plaintiffs, but as discussed more fully in Section B below, by employing their scattershot approach of bringing excessive management fee claims on behalf of 208 Fidelity mutual funds, some of which have assets of only $5 million, Class Action Counsel display a fundamental lack of understanding of the complexity of such claims.

consolidated and Class Action Counsel should not be appointed as lead counsel with respect to the Section 36(b) claims of the *Haugen* Plaintiffs.  The *Haugen* Plaintiffs should be permitted to pursue their case independent of the Class Action Plaintiffs, with the counsel of their choice.

> **B. There Are Inherent Conflicts Between The Underlying Theory of the Class Actions and the Underlying Theory of the *Haugen* and *Bennett* Actions, Which Makes Consolidation of the Cases With Class Action Counsel as Lead Counsel Inappropriate.**

In considering whether Class Action Counsel should be appointed lead counsel, under Fed. R. Civ. P. 23(g), or whether the Class Action Plaintiffs should be appointed as class or derivative plaintiffs, the Court must determine whether they can fairly and adequately represent the interests of the class (with respect to class claims), Fed. R. Civ. P. 23(a)(4), and the shareholders of the Fidelity funds (with respect to derivative claims). Fed. R. Civ. P. 23.1.  Meeting these requirements is particularly important because the "rights of absentee class members may be implicated if they are bound by a final judgment in a suit where they were inadequately represented by the named plaintiff." *Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986).

> In undertaking an inquiry into adequacy, the Court considers the conflicts of interest of the class counsel, as well as the class representatives…. Class counsel must act with unwavering and complete loyalty to the class members they represent, and the 'responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel.

*Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 589 (W.D.Tex.2002).  Particularly in light of the breadth and complexity of these cases, it is necessary that lawyers pressing the claims be unfettered by divided loyalties or allegiances.

Here, there is an inherent conflict that prevents the Class Action Plaintiffs and Class Action Counsel from fairly and adequately representing the interests of the shareholders of Fidelity Contrafund and Fidelity Magellan Fund, while at the same time, representing the interests of the shareholders of the more than 200 other Fidelity funds at issue in the Class Actions. Not only do the Class Plaintiffs and Class Action Counsel suffer a conflict because they seek to represent both class claims and derivative claims in one action,[3] but there is a direct antagonism between the Section 36(b) claims asserted by the *Haugen* Plaintiffs and the Section 36(b) claims asserted in the Class Actions that renders consolidation inappropriate.

The essence of the *Haugen* Plaintiffs' section 36(b) claims is that as the Fidelity Magellan Fund and Fidelity Contrafund grew to gargantuan size, Fidelity generated but failed to pass on to shareholders the economies of scale resulting from that enormous growth. As alleged in the *Haugen* Complaint:

> The Fidelity Magellan Fund is one of the largest actively managed mutual funds in the world. Fidelity Contrafund is close behind. The larger the portfolio, the greater the benefits from economies of scale and the less it costs to provide investment advisory services. Eventually, when portfolios become as large as those of the Funds, the cost of providing Portfolio Section Services for each additional dollar of assets under management approached zero.

*Haugen* Complaint, ¶9; *see also id.*, ¶¶15-24, 60-71.

Fidelity Magellan Fund and Fidelity Contrafund have $62.5 billion and $42.8 billion in assets under management, respectively:

---

[3] *See Kamerman v. Steinberg*, 113 F.R.D. 511, 516 (S.D.N.Y. 1986); *Ryan v. Aetna Life Ins. Co.,* 765 F. Supp. 133, 135 (S.D.N.Y. 1991); *Brickman v. Tyco Toys, Inc.*, 731 F. Supp. 101, 108-09 (S.D.N.Y. 1990); *Diana v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 75-6194, 1977 WL 1046, at *3 (S.D.N.Y. 1977); *Petersen v. Federated Dev. Co.*, 416 F. Supp. 466, 475 n. 6 (S.D.N.Y. 1976); *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93, 95 (S.D.N.Y. 1972).

**Table 1**

| Fund Name | Morningstar Category | Assets (Sept 2004) | Advisory Fee (percentage) | Annual Dollar Advisory Fees |
|---|---|---|---|---|
| Fidelity Magellan | Large Blend | $62,550,000,000 | 0.57 | $356,535,000 |
| Fidelity Contrafund | Large Blend | $42,840,000,000 | 0.81 | $347,004,000 |

The assets under management by the other funds at issue in the Class Actions pale by comparison. The overwhelming majority -- 92% -- of Fidelity funds at issue in the Class Actions hold less than $10 billion in assets – with 62% holding less than $1 billion in assets. No fewer than 43 of the funds hold less that $100 million in assets. The smallest, the Fidelity Advisor Emerging Markets, has assets of only $5 million and is charged an annual advisory fee of only $41,500. By contrast, the annual advisory fees charged to the Fidelity Magellan Fund and Fidelity Contrafund, respectively $356.7 million and $347.0 million, are more than 8,000 times higher.[4]  See Exhibit 1 hereto.

In order to prove their cases, the *Haugen* Plaintiffs, among other things, intend to rely upon the fees Fidelity charged to other institutional investors and to other Fidelity Funds as evidence that the fees charged to Fidelity Magellan Fund and Fidelity Contrafund are excessive. E.g. *Haugen* Complaint, ¶¶45-56.

---

[4] "In the money management business, investment advisors (including the Defendants) routinely offer their services to institutional clients with 'breakpoints' (lower fees as assets increase) because of the extraordinary economies of scale inherent in this industry." *Haugen* Complaint, ¶6. "These breakpoints specifically reflect that costs decline dramatically as assets under management increase by, for example, lowering the management and other fees (as a percentage of assets but not in total dollars) as assets grow. The agreements between the Defendants and the Funds do not incorporate breakpoints even though the Defendants offer breakpoints to other institutional clients." *Haugen* Complaint, ¶18. While one would expect breakpoints with respect to advisory fees to be offered to colossal funds such as Fidelity Magellan Fund and Fidelity Contrafund, one would not expect breakpoints to be offered to a fund as small as Fidelity Advisor Emerging Markets Fund.

For example, among the funds owned by the Class Action Plaintiffs is the Fidelity Spartan U.S. Equity Index Fund. *Awali* Complaint, ¶21. Such index funds typically charge considerably lower portfolio selection fees. As alleged in the *Haugen* Complaint, "Magellan … is a de facto index fund, with fees being vastly excessive in comparison to index fund costs." *Haugen* Complaint, ¶22. Fidelity Spartan U.S. Equity Fund is charged an advisory fee of 24 basis points compared to 57 basis points for Fidelity Magellan Fund. On an annual basis, the Fidelity Spartan U.S. Equity Fund is charged $48.5 million in advisory fees compared to $356.5 million for Magellan. Thus, there is a direct factual antagonism between section 36(b) claim asserted on behalf of Fidelity Magellan Fund and the section 36(b) claim asserted on behalf of the lower cost Fidelity Spartan U.S. Equity Index Fund. However, because they purport to represent shareholders in the Fidelity Spartan U.S. Equity Index Fund (and a variety of other Fidelity index funds not owned by the Class Action Plaintiffs), as well as shareholders the Fidelity Magellan Fund, Class Action Counsel would be hamstrung to make the best arguments on behalf of their respective clients.

Among the other Fidelity funds owned by the Class Action Plaintiffs are Fidelity Advisor Growth & Opportunity Fund and the Fidelity Trend Fund, *Awali* Complaint, ¶¶22-23, 25-26, both of which are "Large Blend" funds like Fidelity Magellan Fund and Fidelity Contrafund, but of much smaller size:

**Table 2**

| Fund Name | Morningstar Category | Assets (Sept 2004) | Advisory Fee (percentage) | Annual Dollar Advisory Fees |
|---|---|---|---|---|
| Fidelity Advisor Growth Opportunity Fund | Large Blend | $ 4,942,000,000 | 0.43 | $21,250,600 |
| Fidelity Trend | Large Blend | $ 860,000,000 | 0.37 | $ 3,182,000 |

Given economies of scale, one would expect the advisory fees, on a percentage basis, would be significantly lower for Fidelity Magellan Fund and Fidelity Contrafund, than for Fidelity Fund, Fidelity Advisor Growth Opportunities Fund and Fidelity Trend Fund, but the opposite is true. As demonstrated in Tables 1 and 2 above, despite the economies of scale associated with size, Fidelity Advisor Growth Opportunities Fund and Fidelity Trend Fund had advisory fees, respectively of 43 basis points and 37 basis points, compared to advisory fees of 57 basis point for Fidelity Magellan Fund and 81 basis points for Fidelity Contrafund. On an annual dollar basis, the advisory fees charged to the Fidelity Magellan Fund ($356.7 million) and Fidelity Contrafund ($347.0 million) dwarf the advisory fees charged to the Fidelity Advisor Growth Opportunities Fund and the Fidelity Trend Fund, which are charged advisory fees of $21.2 million and $3.2 million respectively.

Not tainted by this factual antagonism, the *Haugen* Plaintiffs would aggressively use such data, and data regarding other lower cost Fidelity funds, as evidence that the advisory fees charged to Fidelity Magellan Fund and Fidelity Contrafund are excessive. However, the Class Plaintiffs and Class Action Counsel would be presented with a

Hobbesian choice: presenting such evidence would not be in the interests of the plaintiffs who own the Fidelity Advisor Growth Opportunities Fund and the Fidelity Trend Fund; by contrast, holding back such evidence, it would not be interests of the plaintiffs who own Fidelity Magellan Fund and Fidelity Contrafund. *See Crawford v. Magee,* No. 89-1038, 1993 WL 438463, at *4 (D. Mass. Oct. 12, 1993) (Wolf, J. ) ("[I]n derivative actions, courts look to a variety of factors, including: economic antagonisms between representative and class … " and finding that plaintiff's derivative interest would preclude his serving as class representative); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 308 (D.Mass.1987) (stating that in class actions, "the absence of potential conflict between the named plaintiffs and the class members and ... assurance of vigorous prosecution" are important factors in determining adequacy) (Wolf, J). *See also Larson v. Dumke*, 900 F.2d 1363, 1366 (9th Cir. 1990); *Davis v. Comed, Inc.*, 619 F.2d 588, 593-94 (6th Cir.1980).

Thus, unlike in *Bertozzi v. King Louie International, Inc.*, 420 F. Supp. 1166, 1180 (D.R.I. 1976) (Reply, pp. 11-12), the Class Action Plaintiffs success in prosecuting Section 36(b) claims on behalf of the Fidelity Magellan Fund and Fidelity Contrafund and the other Fidelity funds at issue in the Class Actions are "not equally contingent upon proof of the same nucleus of facts" and the Class Plaintiffs and Proposed Lead Counsel in the Class Action cannot "be expected to attack all fronts with equal vigor." In order to vigorously prosecute Section 36(b) claims on behalf of Fidelity Magellan and Fidelity Contrafund to their fullest capacity, Class Action Counsel would have to sacrifice the Section 36(b) claims of its clients in the smaller Fidelity funds.

In *Krim v. pcOrder.com*, one of the law firm's seeking to be appointed as Class Action Counsel here was criticized for doing just that -- sacrificing the interests of its clients with less lucrative claims to further its own interests. 210 F.R.D. at 589-90. After concluding that counsel could not adequately represent plaintiffs in multiple lawsuits in which they sought to represent different classes of shareholders of pcOrder.com, against the same defendants, the Court rejected counsel's offer to withdraw from some but not all of the cases:

> Mr. Baskin and Milberg Weiss both offer to withdraw from representing the class in the Martens case, but Milberg Weiss will continue as lead counsel in the New York Litigation. Milberg Weiss would also withdraw as lead counsel in this case and Mr. Baskin would alone serve as lead counsel and make all decisions required of lead counsel. **This proposal not only fails to erase all of this Court's concerns about potential conflicts, it clearly illustrates them and causes the Court to question the zeal with which counsel are looking after their clients' interests as opposed to their own.** Counsel quickly dropped the class in the lower-dollar state action, but decided to stay involved in this and the New York Litigation, both potentially more lucrative.... If counsel were truly concerned with their clients' interests, they would have offered to withdraw from all potentially conflicting representations, not just the ones with the least amount of money at stake.

*Id*. at 589-90 (emphasis added).

Class Action Counsel focus solely on superficial similarities between the cases but ignore their complexities and differences. Each Section 36(b) claim must be proven fund by fund. Given this direct antagonism between the claims asserted in the *Haugen* Action and those asserted in the Class Actions, Class Action Counsel should not be appointed lead counsel to pursue the Section 36(b) claims of all the Fidelity funds in one consolidated action.

### C. The Class Action Plaintiffs Continue To Downplay The Substantial Differences Between the *Haugen* Action and the Class Actions.

The Class Action Plaintiffs attempt to minimize the material differences between the *Haugen* Action and the Class Actions that are extensively discussed in the *Haugen* Plaintiffs' Memorandum of Law in Opposition to Motion for Appointment of Tri-Lead Counsel and for Consolidation. However, those procedural and substantive differences are likely to substantially delay the resolution of the *Haugen* Plaintiffs' claims. Most of these issues are unique to the Class Actions and would not appear in the *Haugen* Action if it proceeded independently of the Class Actions.

The Defendants have already answered the *Haugen* Complaint and the parties are prepared to proceed with discovery. By contrast, the proposed pretrial order in the Class Actions contemplates that a Consolidated Amended Complaint will not be filed until 60 days after "the date of the entry of the latter of Pretrial Order No.1 [consolidating the actions] or Pretrial Order No. 2 [appointing Class Action Counsel as tri-lead and liaison counsel]. Defendants' motion to dismiss will not be ready for argument for another 120 days thereafter.[5]

---

[5] Class Action Counsel suggest: "The *Gilliam* Plaintiffs have the very same Section 36(b) claims as *Haugen/Bennett* so if Defendants are not going to move to dismiss the latter they would not have reason to move to dismiss the former." Reply, pp. 9-10. That is not the case. In contrast with the detailed and specific allegations of advisory fee wrongdoing presented by the *Haugen* Plaintiffs, *Haugen* Complaint, ¶¶45-115, the Class Action Complaints offer only fleeting and superficial allegations regarding excessive fees. Such cursory treatment of the Section 36(b) claims is unlikely to withstand a motion to dismiss under *Olesh v. Dreyfus Corp.*, No. 94-1664, 1995 WL 500491, at *19 (E.D.N.Y. Aug. 8, 1995) ("complaint nowhere alleges that the fee increases at issue here would violate [standard of reasonable relationship to product of arm's length bargaining]" and therefore fails to cite an actionable claim under section 36(b) (*citing Meyer v. Oppenheimer Mgmt. Corp.*, 764 F.2d 76, 81 (2d Cir. 1985), and *quoting Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir. 1982)). Moreover, the Class Action Plaintiffs assert a litany of claims under Section 34(b) of the ICA, Section 206 of the Investment Advisor Act "IAA"), Section 215 of the IAA, and under common law, which may be subject to motions to dismiss.

Apparently, delay in the resolution of the *Haugen* Action is what the Class Action Plaintiffs are seeking. On December 8, 2004, the Class Action Plaintiffs moved to intervene in the *Haugen* Action for the sole purpose of moving to stay that action pending a decision on their motion to consolidate. Unable to make the required showing that the interests of their clients are being inadequately protected, Fed. R. Civ. P. 24, Class Action Counsel complain that the *Haugen* Plaintiffs have the audacity of promptly trying to move their case forward and accuse the defendants of conspiring with the *Haugen* Plaintiffs to do so. Absolutely nothing has prevented the Class Action Plaintiffs from doing the same with their cases. However, Class Action Counsel are apparently more concerned with having a leadership structure in place that shuts everyone else out than in reaching a prompt resolution of their cases on the merits.

The Class Actions also are likely to be bogged down with substantial discovery and litigation on the Class Plaintiffs' motions for class certification and over their standing to sue on behalf of Fidelity funds that they do not own.[6] The *Haugen* Action is

---

[6] In this regard, the Class Action Plaintiffs misconstrue the *Haugen* Plaintiffs' standing argument. The *Haugen* Plaintiffs do not take the position that the Class Action Plaintiffs do not have standing to sue on behalf of the 32 Fidelity funds which they own. Rather, the *Haugen* Plaintiffs contend that the Class Action Plaintiffs do not have standing, under Section 36(b) of the ICA, to bring suit on behalf of an addition 174 Fidelity funds that the Class Action Plaintiffs do not own. 15 U.S.C. §80a-35(b). *See also Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486 (N.D. Ill. 1999); *Olesh v. Dreyfus Corp.*, No. CV-94-1664 (CPS), 1995 WL 500491 (E.D.N.Y. Aug. 8, 1995); *Dandorph v. Fahnestock & Co.*, 462 F. Supp. 961, 965 (D. Conn. 1979); *Weiner v. Winters,* 50 F.R.D. 306 (S.D.N.Y. 1970).

There is no contrary legal authority. In that regard, the Class Action Plaintiffs miscite *Dreyfus Aggressive Growth Mutual Fund Litig.,* 2000 WL 1357509 (S.D.N.Y. 2000) for the proposition that "an investor can bring his or her direct Section 36(b) claim representatively under Rule 23 on behalf of the investors in other funds who have common claims against the same defendants." Reply, pp. 16-17. *Dreyfus* did not involve certification of a 36(b) claim; rather, the Court certified plaintiffs' claims for misrepresentations and omissions in their prospectuses in "violation[] of Sections 11 and 12(a)(2) of the Securities Act of 1933." *Id.* at **1-2. There were no Section 36(b) claims asserted and the only ICA claims, under Section 34(b) of the ICA, had previously been dismissed. *Id.* at *1.

Despite the lack of authority supporting their position, the Class Action Plaintiffs nevertheless maintain that they have standing to bring 36(b) claims on behalf of the 174 Fidelity funds they do not own. Reply, pp. 14-20. Defendants no doubt will contest their position. Litigation over the Class Plaintiffs

a statutory derivative action under section 36(b) of the ICA and is not subject to these same procedural hurdles and requirements.

Ultimately, in their the Reply, the Class Action Plaintiffs continue to ignore the many material differences between the *Haugen* Actions and the Class Actions, which have the potential to drastically delay a resolution of the *Haugen* Action. The *Haugen* Action is ready to move forward. It is Class Action Counsel who has attempted to highjack the *Haugen* case and interpose the complexities of a class action litigation construct onto a streamlined statutory derivative claim, where none exists. The Reply continues to be devoid of any meaningful discussion of how consolidation of these matters which would require fund by fund proof that management fees were excessive would benefit the parties (other than Class Action Counsel) as well as serve the interests of judicial convenience and economy. To the extent that there is some overlap between the cases, any such overlap could be handled through pretrial coordination of discovery. The substantial prejudice and delay that the *Haugen* plaintiffs will suffer as a result of consolidation with the Class Actions, however, greatly outweigh any benefits that could result from consolidation.

## CONCLUSION

The Class Action Plaintiffs' Motion for Consolidation and Motion for Appointment of Tri-Lead Counsel and Appointment of Liaison Counsel should be denied to the extent that it would encompass the *Haugen* Action or the related *Bennett* Action. The *Haugen* Action and the *Bennett* Action should be prosecuted, by undersigned counsel and counsel for the *Bennett* plaintiffs, separately from the Class Actions pending before this Court.

---

standing is likely to be extensive and delay the final resolution of the Class Action Claims to the detriment of the *Haugen* Plaintiffs if the cases are consolidated.

Dated:  December 20, 2004	Respectfully submitted,

SHAPIRO HABER & URMY LLP

By: /s/  Michelle H. Blauner
    Michelle H. Blauner, BBO # 549049
    53 State Street
    Boston, MA  02109
    (617) 439-3939

    Lynn Lincoln Sarko (*pro hac vice*)
    Michael D. Woerner (*pro hac vice*)
    Gretchen F. Cappio (*pro hac vice*)
    KELLER ROHRBACK L.L.P.
    1201 Third Avenue, Ste. 3200
    Seattle, WA  98101-3052
    (206) 623-1900

    Gary Gotto
    Ron Kilgard
    KELLER ROHRBACK P.L.C.
    National Bank Plaza
    3101 North Central Avenue, Ste. 900
    Phoenix, AZ  85012
    (602) 248-0088

    Michael J. Brickman (*pro hac vice*)
    James C. Bradley (*pro hac vice*)
    Nina H. Fields (*pro hac vice*)
    RICHARDSON, PATRICK,
    WESTBROOK & BRICKMAN, LLC
    174 East Bay Street
    Charleston, SC  29401
    (842) 727-6500

    Guy M. Burns
    Jonathan S. Coleman
    Becky Ferrell-Anton
    JOHNSON, POPE, BOKOR, RUPPEL
    & BURNS, L.L.P.
    100 North Tampa Street, Ste. 1800
    Tampa, FL  33602
    (813) 225-2500

Counsel for the Haugen Plaintiffs